1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MELANIE OSACAR,                )   No. CV-12-5040-LRS
                               )
            Plaintiff,         )   **ORDER GRANTING**
                               )   **DEFENDANT'S MOTION FOR**
    vs.                        )   **JUDGMENT,** *INTER ALIA*
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of Social  )
Security,                      )
                               )
            Defendant.         )
_____)

**BEFORE THE COURT** are Plaintiff's Motion For Summary Judgment
(ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 20).

**JURISDICTION**

Melanie Osacar, Plaintiff, applied for Title XVI Supplemental Security
Income benefits ("SSI") on May 22, 2007.  The application was denied initially
and on reconsideration.  Plaintiff timely requested a hearing and a hearing was
held on April 7, 2010, before Administrative Law Judge (ALJ) Moira Ausmens.
Plaintiff, represented by counsel, appeared and testified at this hearing via video.
Thomas Polsin also testified as a Vocational Expert (VE).  On July 27, 2010, the
ALJ issued a decision denying benefits.  The Appeals Council denied a request for
review and the ALJ's decision became the final decision of the Commissioner.
This decision is appealable to district court pursuant to 42 U.S.C. §1383(c)(3).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1

**STATEMENT OF FACTS**

2          The facts have been presented in the administrative transcript, the ALJ's
3  decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.
4  At the time of the administrative hearing, Plaintiff was 25 years old.  She has a
5  GED (general equivalency degree) and no past relevant work experience.  Plaintiff
6  alleges disability since July 24, 2006, due to mental impairments.

7

8

**STANDARD OF REVIEW**

9          "The [Commissioner's] determination that a claimant is not disabled will be
10  upheld if the findings of fact are supported by substantial evidence...." *Delgado v.*
11  *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a
12  mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975),
13  but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th
14  Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573,
15  576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might
16  accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,
17  401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the
18  [Commissioner] may reasonably draw from the evidence" will also be upheld.
19  *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348
20  F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a
21  whole, not just the evidence supporting the decision of the Commissioner.
22  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665
23  F.2d 936, 939 (9th Cir. 1982).

24          It is the role of the trier of fact, not this court to resolve conflicts in
25  evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one
26  rational interpretation, the court must uphold the decision of the ALJ.  *Allen v.*
27  *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

1    A decision supported by substantial evidence will still be set aside if the

2    proper legal standards were not applied in weighing the evidence and making the

3    decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433

4    (9th Cir. 1987).

5

6                                    **ISSUES**

7        Plaintiff argues the ALJ  erred by: 1) improperly evaluating the medical

8    opinion evidence; 2) improperly discounting Plaintiff's credibility; and 3)

9    presenting a hypothetical to the VE which did not properly take into account all of

10   the Plaintiff's limitations.

11

12                                 **DISCUSSION**

13   **SEQUENTIAL EVALUATION PROCESS**

14       The Social Security Act defines "disability" as the "inability to engage in

15   any substantial gainful activity by reason of any medically determinable physical

16   or mental impairment which can be expected to result in death or which has lasted

17   or can be expected to last for a continuous period of not less than twelve months."

18   42 U.S.C. §1382c(a)(3)(A).  The Act also provides that a claimant shall be

19   determined to be under a disability only if his impairments are of such severity

20   that the claimant is not only unable to do his previous work but cannot,

21   considering his age, education and work experiences, engage in any other

22   substantial gainful work which exists in the national economy. *Id.*

23       The Commissioner has established a five-step sequential evaluation process

24   for determining whether a person is disabled.  20 C.F.R. §416.920; *Bowen v.*

25   *Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines if he

26   is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R.

27   §416.920(a)(4)(i).  If he is not, the decision-maker proceeds to step two, which

28

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

The ALJ found that Plaintiff has the following severe impairments: anxiety

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

disorder, not otherwise specified, with reports of panic episodes; trichotillomania; personality disorder, not otherwise specified; and a history of substance abuse disorder with ongoing alcohol use. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1. The ALJ found that plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations: mental limitations that preclude her from the performance of more than simple routine tasks and preclude her from working in a setting with more than superficial contact with the general public and co-workers. Based on Plaintiff's RFC, age, educational level and work experience, and the testimony of VE Thomas Polsin, the ALJ found there are jobs that exist in significant numbers in the national economy which the Plaintiff is capable of performing, specifically bakery helper, warehouse laborer/laborer, stores; industrial cleaner; and small parts assembler. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINION EVIDENCE/RFC**

The Commissioner must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician. The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)(citations omitted).

Plaintiff contends the ALJ erroneously concluded that psychologist Roland Dougherty, Ph.D., opined that Plaintiff had only moderate impairments. Dr. Dougherty first examined the Plaintiff in September 2006 as part of a "Social Security disability evaluation." At that time, Plaintiff reported she had three anxiety attacks in the last six weeks, with each attack lasting up to thirty minutes.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

(Tr. at p. 198).  Dr. Dougherty offered the following "Medical Source Statement:"

> Melanie became pleasant and cooperative with me after some initial tension and anxiety.  Her verbal skills are good.  She reports a history of very good academic functioning in her earlier years and her intelligence appears to be good.  She should be able to carry out most practical job-related skills adequately.  Her greatest difficulties are likely to be interpersonal.  She is extremely concerned about her appearance and [if] she is not able to alter her trichotillomania, this may continue to be an obstacle.  She is also generally tense in relationships and counseling should be helpful in this area.  She appears to be committed to taking care of two younger children despite the stress involved.  I believe that she would like to continue her schooling and should be able to do somewhat better as she matures, with some psychotherapeutic assistance.

(Tr. at p. 205).

Dr. Dougherty assigned Plaintiff a Global Assessment of Functioning (GAF) score of 51.  A GAF score between 51and 60 indicates "moderate symptoms" or "moderate" difficulty in social, occupational, or school functioning. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR).

Dr. Dougherty saw the Plaintiff again in March 2009.  Plaintiff was referred for a psychological evaluation by her children's social worker.  Dr. Dougherty's "[a]ssistance was sought in determining [Plaintiff's] psychological status and its implication for case planning."  (Tr. at p. 292).  Plaintiff reported that she was "doing well emotionally" and that she did not "generally suffer from depression or anxiety," although "[s]he gets anxious in very large crowds or in a busy working environment."  (Tr. at p. 296).  Plaintiff reported "some difficulties with social discomfort though she is not likely to be generally socially isolated or withdrawn and she may speak with some others with relative ease."  (Tr. at p. 299).   Dr. Dougherty considered Plaintiff's "prognosis **as a parent** to be guarded."  (Tr. at p. 302)(Emphasis added).  According to him:

> There is some evidence of an underlying anxiety disorder

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 6**

1
2
3
4
5
6
7

resulting in rather extreme social discomfort and trichotillomania. I believe that a psychiatric evaluation is in order to determine whether medication might be useful to her, if she becomes open to it. I also believe that she needs to be in long-term, weekly psychotherapy to address these sorts of issues noted above. Only clear evidence of progress in therapy would change her prognosis appreciably. Her excessive defensiveness suggests that a goal-directed treatment approach may be useful at first. It may be some time before she is able to trust her counselor adequately for real progress to be made, though superficial compliance may be expected at first. Hopefully, the clinical hypotheses noted above may be of use to her therapist in planning and conducting therapy.

8    (Tr. at p. 302).

9         Dr. Dougherty opined that Plaintiff's GAF was 50 (Tr. at p. 301). A GAF

10   score of 41-50 means "serious" symptoms or "serious" impairment in either social,

11   occupational, or school functioning. A score of 50 is right at the borderline

12   between "moderate" and "serious" impairment. In 2009, Dr. Dougherty was

13   evaluating Plaintiff's functioning as a parent, whereas in 2006, he evaluated her

14   ability to function in the workplace. Furthermore, there is no indication in the

15   record whether the Plaintiff subsequently underwent a psychiatric evaluation, was

16   prescribed and began taking medication, or underwent therapy, all as

17   recommended by Dr. Dougherty. And finally, Dr. Dougherty made no

18   comparison between the results of his 2006 evaluation and his 2009 evaluation,

19   and he did not indicate, expressly or implicitly, that Plaintiff's mental condition

20   had deteriorated since 2006.

21        In April of 2007, Plaintiff was the subject of an initial assessment by Central

22   Washington Comprehensive Mental Health (CWCMH). Nina Rapisarda, M.S.W.,

23   opined Plaintiff's current GAF was 44, but she did not meet the "access to care

24   criteria" because "[h]er depressive symptoms are not significant enough to warrant

25   a Major Depressive disorder diagnosis and Anxiety is not currently a diagnosis

26   that currently meets access to care," and "[s]he does not have any discernable

27   PTSD [post-traumatic stress disorder] symptoms." (Tr. at p. 265).

28

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 7**

In June of 2009, Plaintiff was the subject of an intake assessment by Central Washington Comprehensive Mental Health (CWCMH).  Consistent with Dr. Dougherty's 2009 recommendations, and possibly pursuant thereto, it was noted that Plaintiff "would benefit from a psychiatric evaluation for possible medical management, . . . bi-weekly to monthly individual therapy and possible weekly . . . group." (Tr. at p. 309).  The intake assessors, Katherine Schorman, M.A., and Deborah Blaine, M.S., opined that Plaintiff's current GAF was 45 and that this had been her highest GAF in the past year.  (Tr. at p. 309).  This was, however, only an intake assessment.  The Plaintiff was discharged at intake because she did not meet "access to care standards."  Instead, she was referred to Catholic Family Services for possible therapy.

In March 2010, Plaintiff was the subject of an "Adult Intake Assessment" at Catholic Family Services (CFS).  This was court-ordered for "anger management" as a result of a domestic violence incident between Plaintiff and her boyfriend at the time.  (Tr. at p. 312).  Plaintiff indicated she was seeking the "proper therapy" she needed.  (Tr. at p. 312).  The CFS clinician, Jennifer Obeid-Campbell, MS., indicated Plaintiff's GAF was 41 because she "is unable to maintain employment, has no friends, per her report, and is unable to manage her emotions . . . prefers not to leave her home and has poor interpersonal skills." (Tr. at p. 320).

The ALJ properly discounted the GAF assessments by CWCMH and CFS. The ALJ properly noted they were the "result[] of . . . first-time intake evaluations without the benefit of review of any historical treating source medical records. (Tr. at p. 23).    Additionally, based on the discussion set forth above regarding the differences between Dr. Dougherty's 2006 and 2009 evaluations, and the purpose of the 2009 evaluation, substantial evidence supports the ALJ's conclusion that the GAF assessments by CWCMH and CFS were inconsistent with Dr. Dougherty's opinion.  (Tr. at p. 24).  The ALJ's RFC finding is consistent with Dr.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

Dougherty's 2006 disability evaluation.  Furthermore, it is not inconsistent with his 2009 evaluation of Plaintiff's ability to function as a parent.[1]

In October 2006, Sharon Underwood, Ph.D., completed a "Psychiatric Review Technique" form for Disability Determination Services (DDS) based on the record before her, presumably including the evaluation completed by Dr. Dougherty in September 2006.  Part of the form was a "Mental Residual Functional Capacity Assessment" in which Dr. Underwood opined that Plaintiff was "moderately limited" in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, "moderately limited" in her ability to accept instructions and respond appropriately to criticism from supervisors, and "markedly limited" in her "ability to interact appropriately with the general public."  (Tr. at p. 221).  This assessment is not inconsistent with anything reported or opined by Dr. Dougherty and, more importantly, is consistent with the RFC found by the ALJ:  mental limitations that preclude her from the

---

[1] It is noted that the recently released Fifth Edition of the *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* dispenses entirely with GAF scores.  The rationale offered by the American Psychiatric Association (APA) is:

> Clinician-researchers at the APA have conceptualized need for treatment as based on assessments of diagnosis, severity of symptoms and diagnosis, dangerousness to self or others, and disability in social and self-care spheres.  We do not believe that a single score from a global assessment, such as the GAF, conveys information to adequately assess each of the components, which are likely to vary independently over time.  Further, we are concerned about evidence that the GAF requires specific training for proper use, and that good reliability and prediction of outcomes in routine clinical practice may depend on such training.

"*Insurance Implications of DSM-5*," authored by the American Psychiatric Association, found at www.psychiatry.org

**ORDER GRANTING DEFENDANT'S**

**MOTION FOR SUMMARY JUDGMENT- 9**

performance of more than simple routine tasks and preclude her from working in a setting with more than superficial contact with the general public and co-workers. This is borne out by Dr. Underwood's remarks accompanying her assessment:

> Capable of simple and detailed tasks. Able to get along with others on superficial basis. She is cooperative but feels anxious around others, particularly people she doesn't know. She would do best working alone or with a few others. She has sufficient pace and is capable of tolerating changes.

(Tr. at p. 221). Based on the RFC presented to him, the VE identified jobs in which the Plaintiff would be "working alone or with a few others."

**VE HYPOTHETICAL/CREDIBILITY OF PLAINTIFF**

At the hearing before the ALJ, Plaintiff testified she has "crying spells" brought on by stress and will "lock [herself] up for about an hour and . . . cry if I'm feeling, like, too stressed or anything." (Tr. at p. 45). Asked to describe her worst days, Plaintiff said that on those days she will fight with her boyfriend by criticizing him for the "tiniest" thing. She says this will happen about once or twice a week. (Tr. at p. 46). Plaintiff's counsel asked the VE about the impact of an individual whose mental impairments caused her to take extra breaks during the workday beyond the normal breaks. The VE testified that a person who had to take extra breaks on a frequent basis, even assuming they could secure employment, would not remain employed very long. (Tr. at p. 54-55).

Plaintiff contends it was error for the ALJ to not include these "panic attacks" in her RFC finding and in her hypothetical to the VE. The court disagrees. The medical record did not support including such a limitation in the RFC finding and in the VE hypothetical. In 2006, Plaintiff told Dr. Dougherty she had three anxiety attacks in the last six weeks. (Tr. at p. 198). Even so, Dr. Dougherty opined "[s]he should be able to carry out most practical job-related skills adequately" and indicated she would have "moderate" difficulty in social,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

occupational, or school functioning.  In 2009, Plaintiff reported to Dr. Dougherty that she was "doing well emotionally" and that she did not "generally suffer from depression or anxiety," although "[s]he gets anxious in very large crowds or in a busy working environment."  (Tr. at p. 296).  She also reported "some difficulties with social discomfort though she is not likely to be generally socially isolated or withdrawn and she may speak with some others with relative ease."  (Tr. at p. 299).   Based primarily on Dr. Dougherty's assessments, the ALJ found that one of Plaintiff's severe impairments is an anxiety disorder "with reports of panic episodes" by the Plaintiff.  (Tr. at p. 16).  The frequency of these episodes was, however, legitimately called into question by the ALJ based on what Plaintiff told Dr. Dougherty and due to other issues concerning Plaintiff's credibility, as discussed below.

An ALJ can only reject a plaintiff's statement about limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so.  *Smolen v. Chater,* 80 F.3d 1273, 1283-84 (9th Cir. 1996).  "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)*.  See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered:  1) claimant's reputation for truthfulness;  2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

The ALJ offered "clear and convincing reasons" supported by substantial evidence in the record that Plaintiff's testimony regarding limitations stemming from her mental impairments was not fully credible.  This evidence is set forth in

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

detail in the ALJ's written decision.  (Tr. at pp. 21-22).  It includes the opinions of experts (Drs. Dougherty and Underwood) concerning the nature, severity and effect of Plaintiff's impairments; inconsistencies between her testimony and what she reported to health providers (testifying to extreme social limitation and yet indicating she engages in "social drinking;" testifying to extreme anxiety, yet choosing to live with a boyfriend involved in drug and alcohol abuse which resulted in criminal charges against her); activities of daily living (previously caring for three children and currently caring for an infant, cleaning house daily, eating dinner with her boyfriend's family with whom she resides); failure to appear for consultative examinations, failure to return phone calls and/or respond to mailed correspondence regarding her application for benefits; and non-compliance with recommended treatment and a treatment history that was otherwise minimal, inconsistent, conservative and routine.

## CONCLUSION

Substantial evidence supports the Commissioner's decision that Plaintiff had not been disabled for any continuous 12 month period after July 24, 2006, the alleged onset date.  Accordingly, Defendant's Motion For Summary Judgment (ECF No. 20) is **GRANTED** and Plaintiff's Motion For Summary judgment (ECF No. 14) is **DENIED**.  The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.**  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this ___1st___ of October, 2013.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**